**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 18, 2007

JOSEPH LASH,

Plaintiff-Appellee,

v                                                                     No. 131632

CITY OF TRAVERSE CITY,

Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

At issue in this case is the proper construction of MCL 15.602, a statute that limits the restrictions public employers may make regarding employee residency. While the statute does not allow an employer to require an employee to live in any specific geographic area, it does permit a public employer to require that an employee reside within a distance of 20 miles or more from the public employer's nearest boundary.

Plaintiff alleges that he was denied employment with defendant because the city imposed a residency requirement and measured the requirement in "road

miles" rather than "radial miles."[1] When measured in road miles, the distance between plaintiff's residence and defendant's nearest boundary was greater than that allowed by the city's residency requirement. Plaintiff contends that this residency requirement violates MCL 15.602(2), and seeks monetary damages for defendant's refusal to hire him.

We hold that the 20-mile distance permitted in MCL 15.602(2) is to be measured in a straight line between the employee's place of residence and the nearest boundary of the public employer. Because defendant's residency requirement demands that an employee reside within 15 radial miles of the nearest city limit, defendant's residency requirement contravenes MCL 15.602(2).

However, while defendant has violated the statute, nothing in the statute permits plaintiff to maintain a private cause of action for money damages. Moreover, no private right of action to recover money damages may be inferred because defendant is a governmental entity that is entitled to immunity unless the Legislature has explicitly authorized suits by citizens against the governmental entity.

We therefore hold that there is no private right of action for a violation of MCL 15.602(2). The decision of the Court of Appeals is affirmed in part,

---

[1] As used throughout this opinion, the term "road miles" refers to measuring a distance by the shortest route of public travel. In contrast, the term "radial miles" refers to measuring a distance in a straight line between two points.

reversed in part, and we remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff, a police sergeant with the city of Flint, responded to an advertisement seeking applicants for patrol officers with defendant's police department. The advertisement expressly outlined defendant's residency requirement: "A residency requirement of 15 miles radius, or 20 road miles, from the nearest City limit will be enforced for selected candidates."[2]

Plaintiff was interviewed in December 2002. Subsequently, he received a letter indicating that his interview was successful and that further action would be taken as vacancies arose. The following month, plaintiff purchased a 30-acre parcel of property in Thompsonville, Michigan. The property is located outside the 20-mile limit if measured in road miles, but is within the 20-mile limit if measured in radial miles.

In August 2003, after the candidate list expired, defendant again solicited applicants for patrol officers, outlining the same residency requirement. Plaintiff reapplied and was reinterviewed for the position. In March 2004, plaintiff was

---

[2] This residency requirement, included in the collective bargaining agreement between defendant and the Police Officers Labor Council, is consistent with Traverse City Executive Order No. 311.

offered conditional employment, contingent on his passing a physical examination, a physical endurance test, and a psychological examination.[3]

As part of a routine preemployment background investigation, defendant discovered that plaintiff's property was 23 road miles from the nearest city limit. Plaintiff was advised that the hiring process would not continue unless he complied with defendant's residency requirement. Plaintiff refused to meet the residency requirement and suggested that the city renegotiate the collective bargaining agreement to relax the requirement. Plaintiff's suggestion was rejected. Because plaintiff refused to comply with defendant's residency requirement, defendant rescinded the conditional offer of employment and cancelled the scheduled testing.

In September 2004, plaintiff filed the instant lawsuit against defendant, seeking only monetary damages for defendant's "unlawful failure to hire" him. Plaintiff claimed that defendant's residency requirement violated MCL 15.602 because it required plaintiff to reside closer than 20 miles from defendant's nearest boundary as measured on a radial basis.

Defendant moved for summary disposition, claiming that its residency requirement was valid because the proper measurement under the statute was road miles, and that plaintiff's property did not fall within the requirement. Defendant

---

[3] These examinations were scheduled for early April 2004, approximately three weeks after the conditional offer of employment was made. However, defendant cancelled the testing after rescinding the employment offer.

4

further argued that plaintiff had failed to state a claim because the statute did not create a private cause of action. Lastly, defendant argued that plaintiff suffered no compensable damages because he continued to work as a Flint police officer, earning greater wages than he would have earned with defendant. In addition to suffering no wage loss, defendant noted that plaintiff's Thompsonville property had appreciated in value.

In response, plaintiff observed that MCL 15.602 did not specify road miles as the proper basis of measurement, and contended that a private cause of action was permissible because it provided the only effective redress for the statutory violation. While plaintiff did not claim wage loss damages, he insisted that he had incurred other monetary damages, including mileage expenses incurred during the two employment interviews, "continuing private school expenses" for his children in Flint, costs associated with the purchase and repair of the Thompsonville property, and damages related to his spouse's claimed lost job opportunity in Flint.

The trial court granted summary disposition to defendant, holding that the statutory distance was properly measured in road miles, because the "purpose of the statute" was to ensure that an employee could travel to work within a reasonable time. The trial court also held that a private cause of action could be maintained because there was "no other way to enforce" the statute.

In a published opinion, the Court of Appeals affirmed in part, reversed in part and remanded to the trial court for further proceedings.[4] Regarding the proper means of measurement, two members of the panel held that the distance provided in MCL 15.602(2) was to be measured in radial miles rather than road miles. A different configuration of panel members held that the statute permitted a private cause of action for money damages. This Court granted defendant's application for leave to appeal.[5]

## II. STANDARDS OF REVIEW AND STATUTORY CONSTRUCTION

Addressing the issues presented in this case requires that we interpret MCL 15.602. Issues of statutory interpretation are questions of law that this Court reviews de novo.[6] Similarly, we review the trial court's decision to grant or deny summary disposition de novo.[7]

When interpreting a statute, our primary obligation is to ascertain and effectuate the intent of the Legislature.[8] To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its

---

[4] *Lash v Traverse City*, 271 Mich App 207; 720 NW2d 760 (2006).

[5] 477 Mich 920 (2006).

[6] *Jenkins v Patel*, 471 Mich 158, 162; 684 NW2d 346 (2004).

[7] *Maiden v Rozwood*, 461 Mich 109; 597 NW2d 817 (1999).

[8] *Tryc v Michigan Veterans' Facility*, 451 Mich 129; 545 NW2d 642 (1996).

language.[9]  When the language of a statute is unambiguous, the Legislature's intent

is clear and judicial construction is neither necessary nor permitted.[10]

## III.  ANALYSIS

### A.  THE STATUTE

MCL 15.602 states in relevant part as follows:

> (1) Except as provided in subsection (2), a public employer shall not require, by collective bargaining agreement or otherwise, that a person reside within a specified geographic area or within a specified distance or travel time from his or her place of employment as a condition of employment or promotion by the public employer.

> (2) Subsection (1) does not prohibit a public employer from requiring, by collective bargaining agreement or otherwise, that a person reside within a specified distance from the nearest boundary of the public employer.  However, the specified distance shall be 20 miles or another specified distance greater than 20 miles.

> *  *  *

> (4) Subsection (1) does not apply if the person is a volunteer or paid on-call firefighter, an elected official, or an unpaid appointed official.

The plain language of § 1 describes the general prohibition against residency

requirements—a public employer "shall not require" that a person reside within a

specific geographic area or within a specific distance or travel time from the

employee's workplace as a condition of employment.

---

[9]  *Sotelo v Grant Twp*, 470 Mich 95; 680 NW2d 381 (2004).

[10] *Koontz v Ameritech Services, Inc*, 466 Mich 304; 645 NW2d 34 (2002).

7

While § 1 indicates what a public employer *may not* require, § 2 provides an exception and describes what residency limitations a public employer *may* require as a condition of employment. Under § 2, an employer may require that an employee reside within a *specified distance* from the nearest boundary of the public employer, without regard to the employee's place of employment, as long as that specified distance is 20 miles or greater.

Lastly, § 4 describes the categories of employees to whom the general prohibition against residency requirements described in § 1 is never applicable. A public employer may require on-call firefighters, elected officials, and unpaid appointed officials to reside in a specific geographic area or within a specified distance or travel time from the workplace as a condition of employment.

B. THE METHOD OF MEASUREMENT UNDER MCL 15.602(2)

Defendant maintains that the Legislature's failure to define the method of measuring the 20-mile minimum distance in § 2 renders the statute ambiguous, because the term "20 miles" is susceptible to being measured in either radial miles or road miles. Moreover, defendant claims that this ambiguity is easily resolved by looking to the "purpose" of the statute, which defendant claims is to ensure that employees' travel time "is not too long."

However, we reject defendant's claim that the statute is ambiguous. As an initial matter, the plain meaning of the word "mile" is a measurement of a distance

8

totaling 5,280 feet.[11]   Nothing in the ordinary definition of the word indicates that

this distance is to be measured along available routes of public travel.[12]   Certainly,

had the Legislature desired that the permissible residency restriction be measured

in "road miles" or along roadways it surely could have said so.[13]   We presume that

the Legislature intended the common meaning of the words used in the statute, and

we may not substitute alternative language for that used by the Legislature.[14]

Because inserting the word "road" before "miles" in the statute subverts the plain

language of the statute, defendant's preferred interpretation fails. [15]

The context of the statute provides further support for the conclusion that

the distance stated in MCL 15.602(2) is to be measured linearly.   The statute

_____

[11] *Random House Webster's College Dictionary* (1996), p 859.

[12] As we have noted in previous opinions, a statutory term is not rendered ambiguous merely because resort to a dictionary reveals more than one definition. *Koontz v supra*; *People v Derror*, 475 Mich 316; 715 NW2d 822 (2006). However, in this case the term "miles" has only one definition, which remains constant at 5,280 feet whether the distance is driven, walked, or flown.

[13] See, for example, *Kroger Co v Liquor Control Comm*, 366 Mich 481; 115 NW2d 377 (1962). There, the Court construed a now repealed statute, MCL 436.17a, that prohibited the issuance of a retail liquor license within 500 feet of a church or school. The statute specifically indicated that the 500-foot distance "shall be measured along the center line of the street" from the nearest part of the church or school building to the nearest part of the location seeking the liquor license. *Kroger, supra* at 484.

[14] *Helder v Sruba*, 462 Mich 92; 611 NW2d 309 (2000); *Robertson v DaimlerChrysler Corp,* 465 Mich 732; 641 NW2d 567 (2002).

[15] See *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 729; 614 NW2d 607 (2000); *Detroit Trust Co v Granger*, 278 Mich 152, 162; 270 NW 239 (1936); *Burke v Chief of Police of Newton*, 374 Mass 450; 373 NE2d 949 (1978).

9

specifically provides that the 20-mile distance is to be measured from an employee's property to the nearest *boundary* of the public employer. In contrast to use of the phrase "nearest road," for example, use of the phrase "nearest boundary" does not contemplate a travel route, because the nearest boundary of the public employer might be in a field, in the middle of a lake, or in a backyard. Thus, the fact that the statute specifies one terminus without consideration of navigability further militates in favor of measuring the permissible residency requirement in radial miles.

We also observe that defendant's claimed statutory "purpose" is completely contrary to the structure of the statute. Defendant claims that road miles are the proper method of measurement because the "purpose" of MCL 15.602(2) is to ensure that an employee's "travel time to get to work is not too long." Defendant notes that efficient travel time "is especially critical" for police, fire, or emergency personnel. However, the general prohibition on residency requirements contained in § 1 prohibits an employer from requiring that an employee reside within either a "specified distance" or "travel time" from the employee's workplace. In contrast, the permissible parameter contained in the § 2 exception allows an employer to impose a residency requirement that is a "specified distance" from the nearest municipal boundary. The issue of travel time is conspicuously absent in § 2, indicating that travel time is not a permitted consideration when imposing a residency requirement. Moreover, while the Legislature could certainly have excepted police or other emergency personnel from the general residency

10

requirement prohibition, MCL 15.602(4) indicates that *only* on-call firefighters, elected officials, and unpaid appointed officials are excluded from the prohibition stated in MCL 15.602(1).

We therefore hold that, where a public employer requires an employee to reside 20 miles from the employer's nearest boundary as permitted by MCL 15.602(2), this distance is properly measured in a straight line between the employee's place of residence and the nearest boundary of the public employer. Because defendant's residency requirement obligated plaintiff to reside within 15 radial miles or 20 road miles from defendant's limit, its residency requirement is violative of the statute.[16]

## C. PRIVATE CAUSE OF ACTION UNDER MCL 15.602

Having concluded that defendant's residency requirement contravenes the statute, the remaining issue is whether plaintiff may maintain a private cause of action for money damages against defendant. While the statute does not explicitly provide for a private cause of action, plaintiff claims that a cause of action should

---

[16] In her partially dissenting opinion, Justice Kelly opines that our analysis of the measurement of distance under MCL 15.602(2) is "only dictum," although she agrees with it. We find the logic of her contention hard to follow. Plaintiff seeks damages for defendant's refusal to hire him. Therefore, before determining whether plaintiff may maintain a private cause of action to remedy a violation of the statute, it is imperative to first determine whether a violation exists, thus requiring an analysis of MCL 15.602(2). Moreover, while we ultimately conclude that plaintiff may not maintain a private cause of action for money damages, plaintiff is free to seek the remedies available to him for defendant's violation of MCL 15.602(2).

11

be inferred, because without it plaintiff would have no adequate mechanism to enforce the act.

The Court of Appeals majority[17] stated that the "rule for inferring rights of action" is found in a footnote in *Pompey v Gen Motors Corp.*[18] In *Pompey,* it was noted that where no common-law remedy existed, the remedy provided by statute was the sole remedy. In a footnote following that general proposition, the *Pompey* Court noted "two important qualifications" to this rule of exclusivity, stating that "the statutory remedy is not deemed exclusive if such remedy is plainly inadequate, or unless a contrary intent clearly appears."[19]

In *Gardner v Wood*,[20] the issue presented was whether a civil cause of action for damages could be maintained against a premises owner for violation of the bottle club act, MCL 436.26c. *Gardner* held that, when a statute is silent

---

[17] *Lash, supra* at 213 (opinion by Neff, J.).

[18] 385 Mich 537, 553 n 14; 189 NW2d 243 (1971).

[19] *Id.* (citation omitted). We need not address the dictum in the *Pompey* footnote that some quantum of additional remedy is permitted where a statutory remedy is "plainly inadequate." We do note that this principle, which has never since been cited in any majority opinion of this Court, appears inconsistent with subsequent caselaw. See *Grand Traverse Co v Michigan*, 450 Mich 457; 538 NW2d 1 (1995) (available statutory remedy precluded a private cause of action without resort to assessing its adequacy); *White v Chrysler Corp*, 421 Mich 192, 206; 364 NW2d 619 (1984) (The Court refused to permit a tort remedy for violations of the Michigan Occupational Safety and Health Act, MCL 408.1001 *et seq*., despite acknowledging that the statutory remedy was inadequate because it resulted "in the undercompensation of many seriously injured workers.").

[20] 429 Mich 290; 414 NW2d 706 (1987).

concerning whether a private remedy is available for a statutory violation, a court may infer a private cause of action "if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision . . . ."[21] Utilizing a test derived from the Second Restatement of Torts, *Gardner* held that a cause of action could be created to redress a statutory violation where the purpose of the statute at issue was

"found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) to protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."[22]

While the four-factor test focused exclusively on the purpose of the statute, *Gardner* further observed that the purpose of the statute alone was an insufficient basis for inferring a private right of action. Rather, *Gardner* held that the "determination [to infer a private cause of action] should not only be *consistent with legislative intent*, but should further the purpose of the legislative

---

[21] *Gardner, supra* at 301 n 5, quoting 4 Restatement Torts, 2d, § 874A, p 301.

[22] *Id*. at 302, quoting *Longstreth v Gensel*, 423 Mich 675, 692-693; 377 NW2d 804 (1985), quoting 2 Restatement Torts, 2d, § 286, p 25.

13

enactment."[23]   *Gardner* held that a cause of action could not be maintained because it was inconsistent with the intent of the Legislature, indicating that the imposition of a private cause of action was "a matter for legislative resolution."[24] Similarly, subsequent decisions of this Court have refused to impose a remedy for a statutory violation in the absence of evidence of legislative intent.[25]

In this case, we need not consider either the factors articulated in *Gardner* or the footnote in *Pompey* because neither case may be properly extended to allow a private cause of action for money damages to be implied *against a governmental entity* such as defendant.[26]   Without "express legislative authorization," a cause of

---

[23]   *Id*. at 304 (emphasis added).

[24]   *Id*. at 307.  *Gardner* also cited with approval *Cort v Ash,* 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975), in which the United States Supreme Court delineated several factors to be considered in determining whether a private remedy is available for a statutory violation. However, as we noted in *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd,* 472 Mich 479, 498; 697 NW2d 871 (2005), post-*Cort* cases have retreated from consideration of all the enumerated factors, and now focus exclusively on evidence of  legislative intent "'to create, either expressly or by implication, a private cause of action.'"  (Citation omitted.)

[25]   See *People v Anstey*, 476 Mich 436, 445 n 7; 719 NW2d 579 (2006) ("Because the Legislature did not provide a remedy in the statute, we may not create a remedy that only the Legislature has the power to create."); *Office Planning Group, supra*; *Grand Traverse Co, supra* at 465 ("[W]e cannot find a principled basis for continuation of this cause of action. Reviewing the statute in its entirety, we hold that a plain reading of the statute simply does not support this cause of action or the relief requested.").

[26]   Justice Kelly's partial dissent claims that any discussion regarding whether a private cause of action may be implied for a violation of MCL 15.602 is dictum because governmental immunity bars plaintiff's action.  However, as MCL

(continued…)

action cannot be created "in contravention of the broad scope of governmental immunity . . . ."[27]

Here, there is no express authorization permitting a private cause of action against a public employer for violation of MCL 15.602(2), nor is there any evidence that the Legislature intended such a remedy. Because the words of a statute provide the most reliable evidence of the Legislature's intent, we look there to discern it,[28] and may not speculate regarding that intent beyond those words expressed in the statute.[29]

A "public employer" is defined under MCL 15.601(a) as a political subdivision of the state.[30] Political subdivisions such as defendant enjoy immunity from tort liability under the governmental tort liability act (GTLA), MCL

---

(…continued)
15.602 by its own terms *only applies* to public employers, it is difficult to envision how these two issues are severable. Rather, governmental immunity is the reason that neither *Gardner* nor *Pompey* may be extended to permit the judicial creation of a claim for money damages against a governmental entity.

[27] *Mack v Detroit*, 467 Mich 186, 196; 649 NW2d 47 (2002). Justice Kelly acknowledges the import and precedential effect of *Mack,* but simply disagrees with that decision.

[28] *Sun Valley Foods Co v Ward*, 460 Mich 230; 596 NW2d 119 (1999).

[29] *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305; 596 NW2d 591 (1999).

[30] Specifically, MCL 15.601(a) defines "public employer" as a "county, township, village, city, authority, school district, or other political subdivision of this state and includes any entity jointly created by 2 or more public employers."

15

691.1401 *et seq.*[31]  Under the GTLA, the defendant is immune from tort liability "unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government."[32]  The GTLA permits a cause of action to be brought against a governmental agency in only six discrete areas, none of which is relevant here.[33]  In addition, the Legislature has elsewhere created causes of action against political subdivisions of the state.[34]  In fact, chapter 15 of the Michigan Compiled Laws is replete with instances where the Legislature has *explicitly permitted* actions for monetary damages against municipalities and their employees.[35]  However, none of these exceptions can be interpreted to permit a

---

[31] See MCL 691.1401(d), defining "governmental agency" as "the state or a political subdivision."

[32] *Mack*, *supra* at 195.

[33] The six statutory exceptions to governmental immunity are the highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the governmental hospital exception, MCL 691.1407(4); the proprietary function exception, MCL 691.1413; and the sewage system event exception, MCL 691.1417.

[34] See the Civil Rights Act, MCL 37.2103(g) and MCL 37.2202(1)(a); as well as the Persons with Disabilities Civil Rights Act, MCL 37.1103(g), MCL 37.1201(b), and MCL 37.1202.

[35] See the Freedom of Information Act, MCL 15.232(d)(iii) and MCL 15.240(7) (permitting actual or compensatory damages as well as punitive damages for refusing or delaying disclosure of a public record under the act); the Open Meetings Act, MCL 15.273 (permitting the recovery of up to $500 in damages against a public official for intentional violation of the act); the standards of conduct, MCL 15.342c (permitting a civil action for actual damages for violation of MCL 15.342b); and the Whistleblowers' Protection Act, MCL
(continued…)

16

suit for violation of the permitted residency requirement described in MCL 15.602(2). Rather, the fact that the Legislature has explicitly permitted damage suits in other provisions of chapter 15 provides persuasive evidence that the Legislature did not intend to create a private cause of action for violation of this particular provision.

Moreover, plaintiff's claim that a private cause of action for monetary damages is the only mechanism by which the statute can be enforced is incorrect. Defendant could enforce the statute by seeking injunctive relief pursuant to MCR 3.310, or declaratory relief pursuant to MCR 2.605(A)(1).[36] A preliminary injunction may be granted under MCR 3.310(A) where plaintiff can make a particularized showing of irreparable harm that will occur before the merits of the claim are considered.[37] Moreover, an "actual controversy" exists for the purposes

(…continued)
15.361(b) and MCL 15.363 (permitting a civil action for actual damages for violation of MCL 15.362).

[36] MCR 2.605(A)(1) provides the following remedy: "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

[37] *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 225 n 11; 634 NW2d 692 (2001). In addition to requiring that a moving party demonstrate irreparable harm in the absence of injunctive relief, other factors should be considered by the trial court: "(1) harm to the public interest if such an injunction is issued; (2) whether harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, and (3) the strength of the moving party's showing that it is likely to prevail on the merits." *Id.*

of a declaratory judgment where a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights.[38] In this case, plaintiff's claim is that defendant's residency requirement, made a condition of plaintiff's employment, was in violation of MCL 15.602(2). Such a claim would constitute an "actual controversy" for the purposes of an action for a declaratory judgment.

Plaintiff claims that these remedies are "an illusion," because enforcing the statute by seeking declaratory or injunctive relief would "likely be costly." However, plaintiff cites no authority, and we are aware of none, that would permit the creation of a cause of action for monetary damages in contravention of governmental immunity simply because other available remedies are less economically advantageous to plaintiff. It is not within the authority of the judiciary "to redetermine the Legislature's choice or to independently assess what would be most fair or just or best public policy."[39] Rather, the relief that plaintiff seeks must be provided by the Legislature.

## IV. CONCLUSION

We hold that the 20-mile distance permitted in MCL 15.602(2) is to be measured in radial miles between the nearest boundary of the public employer and

---

[38] *Updegraff v Attorney General,* 298 Mich 48; 298 NW 400 (1941); *Finlayson v West Bloomfield Twp*, 320 Mich 350; 31 NW2d 80 (1948).

[39] *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 504; 638 NW2d 396 (2002).

18

the employee's place of residence.   In this case, the residency requirement demanded by defendant contravenes MCL 15.602(2).

However, we also hold that plaintiff may not maintain a private cause of action for money damages for violation of the statute because nothing in the statute creates such a cause of action.   We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

Robert P. Young, Jr.
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

JOSEPH LASH,

       Plaintiff-Appellee,

v                                     No. 131632

CITY OF TRAVERSE CITY,

       Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in part in the result and dissenting in part*).

I concur with the majority that the 20-mile distance permitted in MCL 15.602(2) is to be measured in a straight line between the employee's place of residence and the nearest boundary of the public employer. I dissent, however, because I believe that the statute allows plaintiff to maintain a private cause of action for money damages for a violation of the statute.

The lack of any remedy in the statute presents a problem. See *Pompey v Gen Motors Corp*, 385 Mich 537, 552 n 14; 189 NW2d 243 (1971). A violation of the statute has significant consequences for an employee or potential employee. For example, a potential employee may not be hired or a current employee may have his employment terminated or may not receive a promotion. But an employee or potential employee may not learn of this statutory violation until the only possible effective remedy is one for monetary damages. Thus, I would affirm

the Court of Appeals on this issue and hold that a private cause of action does exist for a violation of the statute.

Michael F. Cavanagh
Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

JOSEPH LASH,

       Plaintiff-Appellee,

v                                     No. 131632

CITY OF TRAVERSE CITY,

       Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

Consistent with this Court's unfortunate decision in *Mack v Detroit*,[1] the doctrine of governmental immunity bars plaintiff's cause of action here. Hence, no useful purpose is served by interpreting MCL 15.602 or deciding whether a private cause of action exists under the statute. The majority's discussion of these two issues is only dictum.

However, because the majority chooses to discuss these two issues, I will respond. First, I agree that the 20-mile distance permitted in MCL 15.602 is to be

---

[1] 467 Mich 186; 649 NW2d 47 (2002). I continue to agree with the dissent in *Mack*, with which I concurred. See also *Costa v Community Emergency Medical Services, Inc*, 475 Mich 403, 417-420; 716 NW2d 236 (2006) (Kelly, J., dissenting) (recognizing that the holding in *Mack* constitutes binding precedent but reiterating disagreement with the majority's resolution of that case).

measured in radial miles as opposed to road miles.  Also, but for *Mack,* I believe that a private cause of action under the statute would be available to plaintiff because of defendant's violation of MCL 15.602.

APPLICATION OF *MACK* AND THE DOCTRINE OF GOVERNMENTAL IMMUNITY

In *Mack*, this Court held that governmental immunity is a characteristic of government.  *Mack v Detroit*, 467 Mich 186, 190; 649 NW2d 47 (2002).  It is no longer an affirmative defense.  The party seeking to impose liability on a governmental agency has the burden of pleading in avoidance of governmental immunity.  *Id.* at 198.  This Court also held in *Mack* that, without "express legislative authorization," a cause of action cannot be created "in contravention of the broad scope of governmental immunity." *Id.* at 196.  The "presumption [under the governmental tort liability act (GTLA)[2] is, therefore, that a governmental agency *is* immune and can only be subject to suit if a plaintiff's case falls within a statutory exception." *Id*. at 201 (emphasis in original).

Following the rationale of *Mack*, the majority's holding that governmental immunity applies in this case is correct.  As the majority notes, political subdivisions  such as defendant enjoy immunity from tort liability under the

---

[2] MCL 691.1401 *et seq.*

2

GTLA.[3] And none of the six discrete areas[4] in which the GTLA permits a cause of action to be brought applies in this case. Moreover, there is no express authorization permitting a private cause of action against a public employer for violation of MCL 15.602(2). Therefore, under the rationale in *Mack*, governmental immunity applies to bar plaintiff's action.

Whenever governmental immunity applies, in accordance with *Mack,* a plaintiff must plead in avoidance of governmental immunity. *Mack*, *supra* at 198. In this case, plaintiff did not mention the doctrine in his pleadings or at any point in these proceedings.

Accordingly, it is of no legal consequence whether the residency requirement violated MCL 15.602 or whether the statute implies a private cause of action. However, the majority avoids acknowledging the dominant effect that governmental immunity has on this case and instead purports to hold, in addition, that (1) defendant's residency requirement contravenes MCL 15.602(2) and (2)

---

[3] MCL 691.1407(1) states: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1401(d) defines "governmental agency" as "the state or a political subdivision." Therefore, defendant city of Traverse City is a governmental agency for purposes of governmental immunity. As this Court recognized in *Mack*, the management, operation, and control of a police department is a governmental function. *Mack*, *supra* at 204.

[4] See MCL 691.1402 (highway exception), MCL 691.1405 (motor vehicle exception), MCL 691.1406 (public building exception), MCL 691.1407(4) (governmental hospital exception), MCL 691.1413 (proprietary function exception) and MCL 691.1417 (sewage system exception).

3

plaintiff may not maintain a private cause of action for money damages for a violation of the statute. In my view, since the presumption of governmental immunity was never rebutted, it remains and utterly governs the case. The majority's conclusions on other issues is nothing but dicta.[5]

GOVERNMENTAL IMMUNITY AS AN APPELLATE PARACHUTE

Long ago, governmental immunity was viewed as a characteristic of government. *Mack, supra* at 222 (Cavanagh, J., dissenting). However, this view changed once the Legislature codified the common-law doctrine of governmental immunity. *Id*. at 220. Because the Legislature created no presumption favoring blanket governmental immunity, the existence of immunity had to be raised by the party seeking to benefit from it. *Id.* Using that reasoning, Justice Cavanagh concluded in his dissent in *Mack* that governmental immunity is an affirmative defense. *Id.* I continue to support Justice Cavanagh's dissent. I continue to believe that the better view is that governmental immunity is an affirmative defense and that the government still bears the burden of raising and proving it.

In this case, defendant listed governmental immunity as an affirmative defense in its first responsive pleading. However, it never mentioned it again until this Court asked about it. Apparently, because defendant did not mention the issue

_____

[5] The majority never explains why "it is imperative to first determine whether a violation [of MCL 15.602(2)] exists." *Ante* at 11 n 16. Regardless of whether a violation exists, governmental immunity bars plaintiff's cause of action. Only if and when plaintiff sought injunctive or declaratory judgment relief would a court need to decide whether defendant violated MCL 15.602(2).

4

in its motion for summary disposition, the trial court did not address whether it applied. Because defendant did not mention the issue in the Court of Appeals, that Court did not address whether it applied.[6]

Similarly, defendant did not raise the issue before this Court in its application for leave to appeal.[7] In granting leave to appeal, this Court did not order the parties to address the issue. See 477 Mich 920 (2006). Indeed, the first time the parties[8] clearly addressed the issue of governmental immunity was at oral argument before this Court when Chief Justice Taylor raised it sua sponte.[9]

---

[6] Neither the questions presented by plaintiff nor the counter-questions presented by defendant in the Court of Appeals concerned the issue of governmental immunity. The Court of Appeals has repeatedly stated that a party abandons an issue by failing to specifically raise it in the statement of questions presented. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 553; 730 NW2d 481 (2007), citing MCR 7.212(C)(5).

[7] Defendant did not explicitly address the issue of governmental immunity before this Court. Rather, in its brief before the Court of Appeals and this Court, defendant simply stated, "If the Legislature wanted to lift immunity, MCL 691.1407 *et seq*., and create a private cause of action, surely it would have said so." Other than a cursory citation of the GTLA, defendant did not attempt to argue that the act applied. Taken in context, defendant's citation of the GTLA was not in reference to any assertion that governmental immunity applies. Rather, it was in reference to the fact that there is no private cause of action. Therefore, neither of the parties raised the issue of governmental immunity before oral argument.

[8] Although the issue of governmental immunity was raised in an amicus curiae brief, the parties did not raise the issue.

[9] I would note that the procedural history regarding the issue of governmental immunity in this case is similar to that in *Mack*. There, the defendant city raised governmental immunity as a defense in the trial court, but failed to argue the issue in the Court of Appeals or in this Court. *Mack, supra* at

(continued…)

5

Defendant ignored governmental immunity in this case until the eleventh hour. It should not be able to ignore the doctrine in the trial court and the Court of Appeals, then rely on it at the last minute before this Court. This Court should amend its holding in *Mack* to discourage a defendant from using governmental immunity as an appellate parachute.

THE AVAILABILITY OF A PRIVATE CAUSE OF ACTION

I disagree with the majority's dictum that no private cause of action is available to plaintiff. In *Pompey v Gen Motors Corp*,[10] this Court summarized the rules of statutory interpretation that should be followed when determining whether an implied private cause of action exists to remedy a statutory violation. We observed that

> [t]he general rule, in which Michigan is aligned with a strong majority of jurisdictions, is that where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by the statute for its violation and nonperformance is exclusive. [*Pompey v Gen Motors Corp*, 385 Mich 537, 552; 189 NW2d 243 (1971).]

Significantly, the *Pompey* Court also noted two important exceptions to this rule:

---

(…continued)
197 n 13. It was not until oral argument in *Mack* that the issue of governmental immunity was discussed. *Id.* at 226 n 2 (Weaver, J., dissenting). So, just as the parties in this case neither briefed nor discussed whether governmental immunity applies, similarly, in *Mack*, none of the parties discussed or briefed the issue. In *Mack*, Justice Weaver and Justice Cavanagh strongly objected to other justices' sua sponte raising and relying on governmental immunity. Their concerns echo in the instant case as well.

[10] 385 Mich 537; 189 NW2d 243 (1971).

In the absence of a pre-existent common-law remedy, the statutory remedy is not deemed exclusive if such remedy is plainly inadequate . . . or unless a contrary intent clearly appears . . . . [*Id.* at 553 n 14 (citations omitted).][11]

In this case, it is undisputed that no common-law right to relief exists and MCL 15.602 does not explicitly provide a cause of action for the enforcement of its provisions. However, using the test set forth in *Pompey*, I would find that the statute implies the availability of a private cause of action.

MCL 15.602 creates a new right in a particular class of persons. An employee has the right not to be required by his or her employer to reside within a specific geographic area, distance, or travel time from his or her place of employment. MCL 15.602(1). The legislative history of the statute supports the fact that the statute creates the right for an employee to be free from overly restrictive residency requirements imposed by his or her employer. The Senate Fiscal Agency bill analysis, in explaining the rationale behind the act, stated:

Some people believe that these [residency] requirements unfairly infringe on what they believe is the right of the employee, as a citizen, to determine where he or she will live. It was proposed, therefore, that a State statute should prohibit the imposition of strict residency requirements on public employees, but allow local units of government to continue to require residency within a certain proximity. [Senate Fiscal Agency Analysis, SB 198, January 10, 2000.]

---

[11] In *Mack*, this Court concluded that *Pompey* was applicable to claims involving private actors as opposed to public actors. *Mack, supra* at 193 n 5. I continue to voice my disagreement with the decision. My analysis indicates how I would remedy the violation in this case.

7

The bill analysis suggests that the statute was intended to balance the employer's desire for reasonable residency requirements against the employee's right to be free from unduly strict residency requirements.

When the Legislature creates a right in a statute, it must have intended that a remedy exist for a violation of the statute. However, MCL 15.602 does not contain an express remedy for its violation. The majority claims that defendant could enforce the statute by seeking injunctive relief pursuant to MCR 3.310 or declaratory relief pursuant to MCR 2.605(A)(1). Although such equitable remedies are available, they may often be impractical in cases such as the one before us. For example, although a court may grant injunctive relief, all too frequently a defendant would not learn of the statutory violation until the job opening had been filled or eliminated. No action by the employer would remain to be enjoined. Injunctive relief would be useful, if at all, mostly for future applicants and would not assist the plaintiff.

Similar problems exist should a plaintiff bring a declaratory judgment action. It would be of no help to plaintiff in the instant case for a court to make a declaration that defendant's residency requirement is illegal. By the time the decision was issued, the job vacancy that plaintiff sought to fill would have been filled. Accordingly, the Legislature must have intended to allow a private cause of action that includes monetary damages for an aggrieved person in response to a violation of MCL 15.602.

CONCLUSION

I agree with the majority's holding that, pursuant to *Mack*, governmental immunity bars plaintiff's action. However, because governmental immunity applies, the majority's discussion of whether the residency requirement violates MCL 15.602(2) and whether a private cause of action exists is nothing more than dictum.

Were it not for the holding in *Mack,* which I continue to find badly flawed, I would hold that MCL 15.602 implies a private cause of action. Also, I would hold that the 20-mile distance permitted in MCL 15.602 should be measured in radial as opposed to road miles. Finally, but for *Mack,* I would hold that defendant abandoned the defense of governmental immunity.

Marilyn Kelly